SEARS-ROEBUCK & COMPANY *v.* LOIS STARNES.

(*Nashville,* December Term, 1929.)

Opinion filed April 5, 1930.

506

Kyser & Allen and W. E. Kraft, for plaintiff in error.

John Swepston, for defendant in error.

Mr. Special Justice Albert Williams, delivered the opinion of the Court.

This is an appeal from a judgment awarded under the Workmen's Compensation Act and by apt assignments presents three questions:

1. Was the trial court warranted in holding that the appellant came within the application of the Compensation Act, there being no direct proof offered to establish the allegation that it employed as many as five persons?

2. Was the employee's injury compensable?

3. Were the circumstances of the case properly held to have excused the employee from giving the written notice directed by the statute?

█ We find no difficulty in answering the first question. There was ample evidence to warrant the trial judge in finding that the appellant employed as many as five people, notwithstanding that no witness directly so testified. The proof showed that the appellant operated a department store and maintained numerous divisions and that it made use of a number of machines on which to list its daily sales, and that on one of these there were made thousands of operations in the course of a day. In addition to this it was shown that appellant maintained a hospital for the treatment of employees and that a practicing physician and a nurse were employed as a hospital staff. The proverbial wayfaring man would not err in determining immediately from this proof that the appellant was the employer of many times the number of

persons necessary to bring it within the purview of the Compensation Act and there is no reason why a court should be less able to draw such a natural and common-sense inference. It is not necessary to flex any evidentiary formalities in order to arrive at this conclusion.

█ Moreover since a suit under our Compensation Statute follows the course of equity a defendant cannot avail himself of any matter of special defense not stated in his answer even though it should appear in the evidence. 1 Dan. Ch. Pr. 712; *Turley* v. *Turley,* 85 Tenn. (1 Pick.), 261.

The second question cannot be so readily resolved. The nature of the injury makes this one of the borderline cases where analogies indicate a considerable difference among the authorities.

█ The injury for which compensation is sought resulted from an infection following the formation of a callous upon the claimant's finger-tip. This callous in turn was occasioned by the operation of a listing machine which worked with considerable resistance or stiffness, and on which the employee was required to make about ten thousand operations daily. The claimant had been using the machine about five weeks when there developed an infection under a callous upon her finger and this necessitated a minor operation and brought about the disability which in the opinion of the employee's physician will likely be permanent.

There is no cavil but that the injury arose out of and in the course of claimant's employment but there is question as to whether its nature can be termed "accidental" even in the liberal construction of that word as employed in the Compensation Statutes.

The cases are legion as to what may properly be termed an injury by accident and it would be bootless to attempt to reconcile them or to determine with nicety the weight of authority. This court has heretofore disclaimed concern with a mere determination of prevalence between disputed views in cases of this character. (*King* v. *Buckeye Cotton Oil Co.*, 155 Tenn., 495.) But it may be useful to observe how cases analogous to the one before us have been determined in other jurisdictions when the term accident required construction.

Thus where a miner who was required to kneel while at his work suffered a gradual formation of abscess on his hands and knees it was held that he had not been injured by accident. *Marshall* v. *East Holyyell Coal Co.*, 7 W. C. Co., 19; 21 Times L. R., 494; *In re Murray*, 3rd A. R. U. S. C. C., 104.

Where an aneurism was found to be due to the continued strain of the employee's work the English Court held it not to be an accident. *Paton* v. *William Dixon*, 6 B. W. C. C., 882.

A bone felon resulting from a bruise caused by pressing the hand against a screw-driver was held not to have resulted from an accident. In this case the court defined accident as ''an event that proceeds from an unknown cause or is an unusual effect of the known cause and therefore not expected.'' *Woodruff* v. *Howes Construction Co.*, N. Y. App. Div., 120 N. E., 270.

In a Minnesota case the claimant who had been employed in chopping wood and building a road had suffered a frozen thumb which necessitated its amputation. In that state the Compensation Act itself provided that the word ''accident,'' unless a different meaning was indicated by the context, should be construed to mean ''an

unexpected or unforeseen event happening suddenly and violently without human fault." Here, obviously, in the phrase "suddenly and violently" the claimant confronted a limitation that might well have given him pause. But the court on *certiorari* to review the award of compensation said: "The difficult question is whether the requirement that the event be one 'happening suddenly and violently' excludes it (the injury). Freezing comes suddenly and violently as distinguished from gradually and naturally or in ordinary course. . . . We think that a fair construction of the statutory definition does not exclude freezing and we hold that it is a personal injury caused by accident within the meaning of the act." *State ex rel. Virginia & Rainy Lake Co.* v. *Dist. Ct. St. Louis Co.*, 138 Minn., 131, 168 N. W., 585.

Where an employee suffered an abrasion and abscess caused by pressing her forefinger against heads of pins while pinning shirts in a laundry, the abscess was held to be the result of "accidental" injury, although it should here be observed that the controlling statute in this and other California cases did not require that an injury be accidental in order to be compensable. *Smith* v. *Munger Laundry Co.*, 1 Cal. Ind. Acc. Com. (part 1), 168.

On the other hand the same court held that when an employee's hand became inflamed and swollen from the rubbing of a shovel handle against the hand, but which caused no scratch, cut, or abscess, the disability did not result from "accidental" injury. *Potter* v. *City of Brawley*, 3 Cal. Ind. Acc. Com., 210.

A disease known as "beat hand" or "beat knee" common to miners and acquired gradually by continued friction has been held not to be an accidental injury. *Marshall* v. *East Holywell Coal Co.*, 7 W. C. C., 19.

While an employee was engaged in snapping and stripping beans a blister came upon her thumb from which an infection resulted requiring amputation. This was held to be an accidental injury. *Pettit* v. *Mendenhall,* 2 Cal. I. A. C., 238.

A workman's hands became bruised and poisoned from handling rough tan bark. Compensation was awarded although no specific time could be assigned to the inception of the trouble. In this opinion the Court referred to the injury as an accident. *Seward* v. *Sunset Trading & Land Co.,* 3 Cal. I. A. C., 49.

From these cases, all somewhat analogous to the case now under consideration insofar as the question of accident is concerned, it is apparent that no very accurate definition of the term can be founded on them.

It was well said in a Wisconsin case: "The term 'accident' as used in the Workmen's Compensation Act is susceptible of being given such scope that one would hardly venture to define its boundaries. Courts have indulged in very general statements in regard to it but have not worked out any really definite guide." *Bystrem Bros.* v. *Jacobson,* 162 Wis., 180, 155 N. W., 919.

Even in the states where the statutes define "accident" the courts have been called upon in turn to define the definition. This court has considered both the etymology and usage of the word "accident" (*Meade Fibre Corp.* v. *Starnes,* 147 Tenn., 362) but has ventured no exclusive definition, being content to say that it is "usually applied" to an event or happening in the nature of a misfortune, casual or fortuitous. In this same case it was said that the courts had generally employed a definition "somewhat similar" to that set forth in the statutes which undertake such definition wherein suddenness and

violence were included as elements, but the term "sudden" is nowhere held to mean "instantaneous" and we have seen hereinbefore how liberally one court construed the word even where suddenness was made a necessary element by statute.

In *King* v. *Buckeye Cotton Oil Co.* (155 Tenn., 491), this court thus discussed prostration by heat: "We do not think that heat exhaustion or heat prostration can be said to be a necessary incident or an expected result of employment as a fireman in a boiler room. Whether the condition be caused solely or entirely by the excessive temperature of the room or place in which the employee is at work, or whether the excessive temperature of the place or the present physical condition of the workman combine to produce the result there is an element of sudden, unforeseen, and unexpected casualty and misfortune in the result. The fireman expected to become hot, but he did not expect to become overheated to the point of exhaustion or prostration. The difference may be one only of degree, but we see no reason why such a difference may not mark the boundary line between the expected or anticipated and the unexpected or fortuitous. Certainly it marked the boundary in the case of the deceased workman between safety and misfortune."

Referring to this case in *Hartford Acc. & Indem. Co.* v. *Hay* (159 Tenn., 207), this court said, "The prostration of the fireman was found to be fortuitous not to be expected, an unusual event or result, and therefore accidental."

It is not a far cry from the doctrine thus announced to an allowance of compensation in the case before us. In the instant case the employee might have expected a callous to appear on her finger tip, just as callouses often

do upon the finger tips of stenographers and violinists, but the appearance of an infection therefrom was something fortuitous, not to be expected, an unusual event or result, and therefore accidental.

If it be said that the callous required too long to develop to be regarded as an accident it may be answered that it is not the callous but the superadded infection which constitutes the injury and that this manifested itself suddenly albeit not instantaneously.

■ The third question refers to the failure to give written notice as directed by the statute and the sufficiency of the excuse for such failure. As was said in *Washington County* v. *Evans* (156 Tenn., 201), this is a matter by the express terms of the statute peculiarly addressed to the discretion of the trial judge. While this does not mean that the trial judge may nullify the requirements of the act, it does mean that a considerable presumption will be indulged in favor of his findings on the subject of the reasonableness of the excuse for failure to give written notice.

■ In this case the trial judge evidently thought that when the appellant sent the claimant to its hospital, operated on her finger, and inquired concerning it, the employee was under all the circumstances not unnaturally of the opinion that sufficient notice had been given.

Let the judgment of the trial court be affirmed.