**MODERN UPHOLSTERED CHAIR COMPANY, Appellant,**

v.

**Betty RUSSELL, Appellee.**

Supreme Court of Tennessee.

Dec. 9, 1974.

Clinton R. Anderson, Anderson & Anderson, Morristown, for appellant.

James K. Miller, Morristown, for appellee.

## OPINION

HENRY, Justice.

This is a Workmen's Compensation case.

The employer appeals from the action of the trial judge in awarding temporary total benefits, permanent partial benefits based upon 30% disability to the body as a whole and medical expenses.

Essentially the questions before this Court are:

a. the sufficiency of the notice

b. the occurrence of a compensible injury

c. the extent of the injury

d. the power of the court to award temporary total beyond the date of the hearing

The claimant, Betty Russell, had been in the employ of Modern Upholstered Chair Company since September, 1970.

It is the theory of her complaint that permanent and disabling injuries to her back were caused or aggravated by her employment; that "over the last several weeks of her employment (she) began having progressively worsening difficulty, pain, suffering and discomfort in her back" and, as a result, she discontinued working on July 13, 1973.

The Company admits the fact of her employment and the applicability of the Workmen's Compensation Law, but denies all else.

Appellant relies heavily upon the alleged failure of the claimant to give the required notice. In fact, so much reliance was placed upon this defense that the trial judge conducted a bifurcated hearing in order to determine the validity of this defense.

For the purpose of this hearing the parties proceeded upon the assumption that *July 13, 1973* was the date of the injury. The appellant insisted that proper notice was not given until *August 13, 1973*, thirty-one days after the injury.

Sec. 50–1001, T.C.A., requires written notice of injury within thirty days after the accident, absent actual knowledge on the part of the employer and unless reasonable excuse for failure to give notice is shown to the satisfaction of the court.

We judicially note that the thirtieth day, i. e., August 12, 1973, fell on Sunday. Under Sec. 1–302, T.C.A., this day is to be excluded in the computation of time and, therefore, claimant had until August 13, 1973 to give written notice.

At the conclusion of the hearing on notice, the trial judge found that claimant had substantially complied with the notice requirement and there was no resulting prejudice.

Ample material evidence supports this holding.

Claimant, who had a seventh grade education, testified that she reported her difficulties to her Foreman on July 11, 1973; that she worked the next two days with her condition getting "worser and worser"; that the following Monday morning she talked with Louise, the "office lady" and "told her to tell them that I had to go to the doctor"; that she went to see the doctor and called back that same day and talked with "the lady that works in Mr. Paul Mullins' (the Personnel Manager) office" and told her that the doctor "took me off from work for a week, and that I was to see Dr. Purvis, at Knoxville, because there was something wrong with my back, and he did not know what to do about it." She further testified that the following week she went to the Personnel Manager's office and "gave him the paper that Dr. Renner had gave me." After she got out of the hospital she called the company nurse and asked her about getting prescriptions filled.

It is of significance that Dr. Renner is on the Company's approved list.

It is apparent from this testimony that the Company had actual knowledge of the injury and that the trial judge was fully supported in his conclusion that there had been substantial compliance with the statute. We so hold.

Appellant earnestly insists that the proof does not establish that appellee sustained an "injury by accident."

Our courts, very properly, have never attempted a precise and exact definition of the words "injury by accident", as used in Sec. 50–902(d) and as contemplated in our Workmen's Compensation Statutes.

Perhaps the leading Tennessee case attempting a clarification of the phrase is Brown Shoe Co. v. Reed, 209 Tenn. 106, 350 S.W.2d 65 (1961). In that case the court held that disability resulting from a repeated trauma to the ulnar nerve of the left arm produced by constant and repeated movement of the arm in the operation of a machine, constituted an injury by accident within the meaning of the act.

In giving a general definition of the word "accident", the court said:

* * * An accident is generally an unlooked for mishap, an untoward event, which is not expected or designed. Generally in most such cases this Court has repeatedly said that a compensable injury should be the result of something happening by accidental means though the act involving the accident was intentional. Accidental means ordinarily mean an effect which was not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing. It is produced by means which were neither designed nor calculated to cause it. It cannot be reasonably anticipated, it is unexpected, it is produced by unusual combinations of fortuitous circumstances and such an injury is an injury by accidental means. 209 Tenn. at 114, 350 S.W.2d at 69.

The Court further stated that "it is not necessary that the accident occur at any particular or specific time."

In Central Motor v. Burney, 214 Tenn. 118, 377 S.W.2d 947 (1964) the Court had under consideration a case very similar on the facts to the matter here under consideration. There the petitioner's claim was based upon disability resulting from a herniated disc received while lifting heavy loads. A major complaint on appeal was that the trial court had erred in finding that the petitioner had suffered an accident arising out of and in the course of his employment.

In disposing of this contention, Justice Felts, speaking for the Court, relied pri-

marily on *Brown Shoe Co., supra.* After summarizing its holding and quoting therefrom, the Court said:

> From our reading of Brown Shoe Co. v. Reed, supra, we think that the present rule in this state is that when a condition has developed gradually over a period of time resulting in a definite work-connected unexpected, fortuitous injury, it is an "accident" within the terms of our Workmen's Compensation Act, and compensable. This rule conforms with the majority of other jurisdictions which have considered this question, and is expressed in Larson as follows:
>
> > It is safe to say, however, that on the strength of one or more of these reasons, most jurisdictions have at some time awarded compensation for conditions that have developed, not instantaneously, but gradually over periods ranging from a few hours to several decades, culminating in disability from silicosis and other dust diseases [then naming various and sundry things which would be included in the occupational disease statute], * * * cancer, snow blindness, *atrophy, herniated disc and the like* (italics ours). 1 Larson Workmen's Compensation, sec. 39.-10 at 569. 214 Tenn. at 123, 124, 377 S.W.2d at 949.

In Lawrence Leather Co. v. Britt, 220 Tenn. 444, 414 S.W.2d 830 (1967) the Court, speaking through Justice Harbison, then sitting as Special Justice, held that disability to claimant's left hand resulting from pressure on nerve caused by handling animal hides during the tanning process, constituted an "accidental injury."

Plaintiff, in the case under consideration, suffered an injury to her back on May 25, 1968 and a surgical procedure for the removal of a ruptured disc was performed on July 9, 1968. She was awarded compensation on the basis of 15 percent permanent partial disability to the body as a whole.

She was employed by Modern Upholstered Chair Company in September, 1970.

We observe, at this juncture, that it is settled law in this jurisdiction that "when an employer employs a workman he takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person." Swift & Co. v. Howard, 186 Tenn. 584, 212 S.W.2d 388 (1948); Webb v. Rossville Home and Auto Supply Company, 483 S.W.2d 579 (Tenn.1972).

Plaintiff worked for almost three years before she had any difficulty. In fact, she states positively that she had made a complete recovery from her past difficulties. She was employed in the sanding department until June 28, 1973. On that date she was assigned new, and according to her, more arduous and physically demanding duties "tailing a rip saw." This "tailing" job entailed picking up lumber, stacking it on a "flat" and delivering it to various places about the plant. It also involved stooping and bending. Her prior duties required very little stooping and bending and not as much lifting.

As in all litigated Workmen's Compensation cases these, and other facts, are controverted. It is not our function to weigh the evidence; we merely determine whether there is material evidence to support the finding of the trial judge. Travelers Ins. Co. v. Googe, 217 Tenn. 272, 397 S.W.2d 368 (1965).

Plaintiff had had no physical difficulty in connection with her employment until after she began to "tail the rip saw." As aforesaid this was on June 28, 1973. After she started "tailing," her leg started tingling and her back started bothering her. Thirteen days later it was "hurting real bad." Finally on July 13, 1973 she discontinued working and sought medical assistance.

She was referred to Dr. John T. Purvis, a qualified Knoxville neurosurgeon, and on July 24, 1973 he performed lumbar and cervical myelograms followed by a hemilaminectomy. This is the same neurosurgeon who had performed the 1968 operation.

The doctor's testimony, taken in its totality, fairly establishes that her duties, and particularly those after she started working at the rip saw, caused or aggravated her back condition.

Considering all the testimony in the light of Brown Show Company v. Reed, Central Motor v. Burney and *Lawrence Leather Co., supra*, we hold that plaintiff suffered an injury by accident arising out of and in the course of her employment.

■ Appellant contends that there was no material, substantial or legally sufficient evidence to support the Court's award of 30% permanent disability to the body as a whole.

We agree that this is partially correct. The testimony of the plaintiff and her doctor, in our view, would have supported such an award *if*, but only *if*, there had been positive testimony in place of a premature estimate.

Dr. Purvis' deposition was taken on November 20, 1973. At that time he testified unequivocably that she was temporarily totally disabled. However, when asked about the extent of her permanent disability he responded, "Well, I have a general idea of what it will be, however we haven't reached a point where I can make a final determination on that."

Subsequently in his deposition he says that he would "estimate it 25 to 30 percent permanent partial disability to the body as a whole . . . . another 10 to 15 percent on top of the previous 15%" (the percentage disability resulting from the prior injury).

He concluded his deposition by testifying that she would reach her maximum recovery six months after surgery, which would be on or about January 24, 1974.

Additionally, the record reflects that when this case was heard on December 4, 1973, counsel for claimant made this statement to the Court:

Now, what we are here today on is Dr. Purvis, the treating physician, says that it will be a period of months before he will be in a position to evaluate this lady from a permanent disability standpoint, and we are here today to seek to have temporary benefits started.

It is obvious that this case was not ripe for full and final determination.

Clearly this record supports an award of temporary total compensation.

Clearly it would support an award of 30% permanent and total disability to the body as a whole if the doctor substitutes *conclusions for conjectures.*

We affirm the action of the lower court as to the satisfaction of the notice requirement, the satisfaction of the requirement that the claimant was a victim of injury by accident arising out of and within the scope of her employment and as to an award of temporary total compensation.

We reverse to the extent of the cut-off date on temporary total and as to the amount of permanent partial disability.

We remand for a determination of the termination date for the payment of temporary total compensation and the amount of permanent partial compensation.

The costs of this appeal are taxed against the parties equally.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.