James M. WHITE, Appellee,

v.

WERTHAN INDUSTRIES d/b/a Check Printers; General Accident Insurance Company; and Sue Ann Head, Appellants.

Supreme Court of Tennessee, at Nashville.

Jan. 6, 1992.

Roy A. Miles, Jr., Nashville, for appellee.

Michael J. Vetter, Nashville, for appellants.

## OPINION

DAUGHTREY, Justice.

In this workers' compensation case, the employer appeals the judgment of the trial court awarding 50 percent permanent disability to the injured employee. The appellant questions the sufficiency of causation. For reasons set forth below, we agree with the findings of the trial judge and affirm.

The employee-appellee, James M. White, began working for the appellant, Werthan Industries, as early as 1981. He has a long history of disabling conditions. White was born with a congenital hip displacement, which required a total hip replacement in 1975. He testified that he has walked with an abnormal gait ever since that operation.

In 1982, White suffered an on-the-job injury that apparently marked the beginning of the difficulties which led to the disability in this case. While lifting a box of unknown weight, he felt a sharp pain in his back. After the injury, he wore a back brace and could not work for several weeks. He did not, however, claim work-

ers' compensation. For several years following that injury, White's back occasionally "went out," but he did not seek further medical care.

The appellee injured his knee while operating a tractor in October 1987 and underwent surgery for that condition in February 1988. The injury was not work-related. Early in 1989, the appellee strained his back while stepping off a tractor at his father's farm. Complaints of hip and back pain led his treating physician, Dr. G. William Davis, to perform a percutaneous discectomy in April 1989, a procedure which Dr. Davis described as minimally invasive and successful in 70 percent of patients. The back pain persisted, however, and in August of that year, White and Dr. Davis discussed the possibility of additional surgery.

White returned to Dr. Davis on January 8, 1990, because of his continued back pain. Surgery was once again discussed, but at that time, no definite plans for surgery were made and a stronger pain medication was prescribed instead. The next day, White slipped and fell on a wet floor at work. He was taken to a local hospital and operated on by Dr. Davis on January 18, 1990. The surgery, a spinal fusion, involved the removal of a large herniated disc. Although it decreased, White's pain persisted.

Following the second back surgery, White was unable to find suitable employment. He could not do work around his residence and relied on the financial assistance of his wife and his parents. His wife held two jobs, and his parents purchased his home so that he would not lose it.

The trial court heard the testimony of the appellee and his wife and reviewed deposition testimony of Dr. Davis in concluding that White had suffered a compensable injury. The court assessed a 50 percent permanent disability to the body as a whole. The finding was based in part on Dr. Davis's rating of 12 to 15 percent anatomical impairment to the body, and the judge's finding that the appellee could nevertheless secure other employment. The amount was commuted to a lump sum to enable White to repurchase his home from his parents.

■ On appeal, this Court reviews the findings of the trial court utilizing a de novo standard accompanied by a presumption of correctness. T.C.A. § 50–6–225(e). Accordingly, we must affirm unless we find that the evidence preponderates against the ruling of the trial court.

■ In challenging that ruling, the appellant complains principally about an alleged mistaken finding of fact by the trial court, contending that the judge did not take into account the 1989 tractor accident. Even if the appellant is correct in this contention, however, the result remains the same. The existence of a prior disabling condition does not preclude a workers' compensation award where a work-related injury aggravates that pre-existing condition. *Modern Upholstered Chair Co. v. Russell*, 518 S.W.2d 519, 522 (Tenn.1974); *Wheeler v. Glens Falls Insurance Co.*, 513 S.W.2d 179, 184 (Tenn.1974); *Swift & Co. v. Howard*, 186 Tenn. 584, 212 S.W.2d 388, 391 (1948).

■ The only real issue in dispute is the adequacy of causation. At the outset, we note that absolute medical certainty is not required to establish causation. *Chapman v. Employer's Insurance Co.*, 627 S.W.2d 122, 123 (Tenn.1981); *Foster v. ESIS, Inc.*, 563 S.W.2d 180, 183 (Tenn. 1978). Although causation cannot be based upon speculative or conjectural proof, *Smith v. Empire Pencil Co.*, 781 S.W.2d 833, 835 (Tenn.1989); *Simpson v. H.D. Lee Co.*, 793 S.W.2d 929, 931 (Tenn.1990), reasonable doubt is to be construed in favor of the employee. *Hall v. Auburntown Industries, Inc.*, 684 S.W.2d 614, 617 (Tenn. 1985); *see Tapp v. Tapp*, 192 Tenn. 1, 236 S.W.2d 977 (1951). The causal connection may be established by expert opinion combined with lay testimony. *Smith, supra*, 781 S.W.2d at 835. Of course, the burden of proof on this issue, as with every essential element of the claim, lies with the employee. *Roark v. Liberty Mutual Insurance Co.*, 793 S.W.2d 932, 934 (Tenn. 1990); *Smith, supra*, 781 S.W.2d at 835.

The evidence in the record supports the trial court's finding that the January 9 fall aggravated White's pre-existing back condition. At the time of the office visit on January 8, Dr. Davis believed that surgery was a real possibility, but he hoped that an operation could be avoided, and he had not made definite plans for any surgical procedures. The appellee testified that prior to the January 9 incident, he remained unconvinced that he should undergo more surgery.

After the fall, White was immobilized. He could not raise himself off the floor without assistance. He stayed home from work and was unable to do much of anything other than lie in bed. When he did get out of bed, he had to use a cane, taking "baby steps" to move around, and he relied on the assistance of his wife and father to attend to his needs.

Dr. Davis scheduled surgery almost immediately after the fall. He testified that it was unusual to arrange for surgery so rapidly, but that it appeared necessary under the circumstances. The doctor was unable to say with complete certainty that the January 9 incident exacerbated White's pre-existing condition, but he did state that the injury could have aggravated the ailment. Clearly, he testified, White's level of pain was substantially increased following the accident, and any question about the need for surgery was conclusively resolved. Simply put, after January 9, surgery was no longer optional.

The appellant argues that *Talley v. Virginia Insurance Reciprocal* controls the outcome of this case. 775 S.W.2d 587 (Tenn.1989). In *Talley*, the employee had a history of back trouble and claimed that a fall during work caused a disability. We found the employee's injury non-compensable. *Id.,* at 592. Talley's need for surgery, however, was clear even before the accident at work; the injury merely accelerated the time-frame for the operation. The treating physician had been trying to get Talley off pain medication and into the operating room for some time before the accident. In this case, by contrast, neither White nor Dr. Davis was committed to the prospect of further surgery before the accident on January 9. Surgery became necessary only as a result of the fall.

The appellant contends that the proof fails to establish that the appellee suffered permanent anatomical change as a result of the fall. It is true that Dr. Davis could not express a medical opinion as to increased anatomical injury, because there were no documented tests comparing White's pre- and post-fall conditions. However, Dr. Davis testified:

> If you'll let me try to unravel this, if I can. The size of a disk rupture has very little to do with the size of the pain. He had only a four millimeter disk herniation by the MRI on January the 11th. That's not a large disk rupture. At the time of surgery, I told in my operative record, I said he had a large herniated disk. This implies that the images did not reveal the amount of disk tissue really present in the spinal canal, and that happens quite frequently. But I have no objective evidence that his disk was worsened by this January 9th incident because I just don't know. The pain was worsened. It was unrelenting. It never reduced any or I wouldn't have operated on him so rapidly.

Dr. Davis believed that "it's easy to explain to myself medically what happened. It is not nearly so easy to explain to you legally what happened."

Any equivocation reflected in Dr. Davis's testimony must be considered to constitute exactly the type of reasonable doubt that we are required by law to construe in favor of the employee. *See Hall v. Auburntown, supra,* 684 S.W.2d at 617. Although Dr. Davis could not testify with absolute certainty that there was an objective, medically measurable condition linking the accident to the injury, it is obvious from the subsequent course of treatment, as well as the appellee's testimony, that his back injury was aggravated by the incident at work on January 9. Although he was taking medication for pain before his fall, after the accident he was virtually immobilized by pain. As Justice O'Brien pointed out in *Talley,* under such circumstances "[t]here

is no doubt that pain is considered a disabling injury, compensable when occurring as a result of a work-related injury." 775 S.W.2d at 592.

We find that Dr. Davis's testimony, coupled with that of the appellee and his wife, is sufficient to support a causal connection between the on-the-job accident and the appellee's disability. The evidence does not preponderate against the finding of the trial court in this regard.

This appeal presents a genuine issue of factual controversy, and the appellee's claim for damages for frivolous appeal must therefore be denied. The judgment of the trial court is affirmed. Costs are assessed to the appellant.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.