

**FILED**

**September 16, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 1:05 PM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **JOHN MILLER** | ) | **Docket No.: 2015-05-0158** |
|     **Employee,** | ) | |
| **v.** | ) | **State File No.: 69295-2014** |
| | ) | |
| **LOWE'S HOME CENTERS, INC.** | ) | **Date of Injury: August 31, 2014** |
|     **Employer,** | ) | |
| **And** | ) | **Judge Dale Tipps** |
| | ) | |
| **SEDGWICK CMS** | ) | |
|     **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on September 8, 2015, upon the Request for Expedited Hearing filed by Jon Miller, the Employee, on August 10, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Lowe's Home Centers, Inc. (Lowe's), is obligated to provide medical benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes Mr. Miller is entitled to the requested medical treatment.

### Issues

The Dispute Certification Notice (DCN) issued in this claim indicated a number of issues. The Court did not decide issues marked on the DCN unless presented for determination at the Expedited Hearing. The parties presented the following issues for determination at the Expedited Hearing:

*Whether Mr. Miller's left-hip condition arose primarily out of and in the course and scope of his employment with Lowe's; and,*

*If so, whether Mr. Miller is entitled to additional medical treatment for his left-hip condition.*

1

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Transcript of Dr. Joseph Wade's Deposition of August 25, 2015, including Exhibits.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), May 20, 2015
- DCN, June 19, 2015
- Request for Expedited Hearing, August 10, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

Mr. Miller provided in-person testimony.

**History of Claim**

Mr. Miller is a sixty-two-year-old resident of Marshall County, Tennessee. (*See* PBD). He testified he worked in the delivery department for Lowe's for over two years before his work accident. Mr. Miller's duties included loading and unloading appliances and other construction materials on and off delivery trucks. A large part of his work involved moving and installing appliances at customers' homes using a hand dolly. Mr. Miller described work that involved a considerable amount of heavy lifting. He repeatedly denied ever having problems or pain in his left hip before his workplace fall.

Mr. Miller testified that, on August 31, 2014, he was moving a stove on a dolly when he stepped back over a pallet jack and fell on his left side. He hit his head on a metal beam and lost consciousness. Lowe's provided medical benefits, including treatment for his left hip with Dr. Wade. However, Lowe's later denied his left-hip claim.

Mr. Miller stated his hip hurts every day. He has difficulty sitting and walking. He now walks with a limp, and his pain causes him to have difficulty sleeping.

Dr. Wade first saw Mr. Miller on November 5, 2014, for his lumbar spine. Mr. Miller also complained of left shoulder pain and left-leg pain. On December 2, 2014, Dr. Wade ordered an x-ray of Mr. Miller's hip. He diagnosed severe osteoarthritis of the left hip and recommended a hip replacement. Dr. Wade noted on April 14, 2015, Mr.

2

Miller's osteoarthritic hip "has been exacerbated by his work injury." (Wade depo., Ex. 3.)

Mr. Miller's attorney sent Dr. Wade a letter on February 19, 2015, asking a number of questions. Dr. Wade's checkmark responses reflect his opinion that: Mr. Miller's workplace fall caused his condition to become symptomatic; he would not need the recommended surgery if he had no pain or symptoms in his hip; and surgery was needed because of the pain caused by the work injury, although he would have eventually needed surgery without the injury. (Wade depo., Ex. 2.)

On May 12, 2015, Lowe's attorney sent Dr. Wade another letter requesting his opinions on causation. Dr. Wade's checkmark responses show he believed Mr. Miller's workplace accident temporarily exacerbated his preexisting condition but did not permanently aggravate the condition or cause any permanent anatomical change. (Wade depo., Ex. 4.)

Dr. Wade gave his deposition in this matter on August 25, 2015. He confirmed Mr. Miller had preexisting arthritis, which became "much more symptomatic" after his fall. (Wade depo. at 11.) The mechanism of the increase in symptoms is not clear, but it could be related to increased strain on the hip because of the back injury or to the cartilage scraping or grating during the fall. *Id.* at 11-12. Dr. Wade also stated Mr. Miller's current pain was the reason for his surgery recommendation, although Mr. Miller would likely have needed surgery at some time in the future even if the accident had not occurred. *Id.*

On cross-examination, Dr. Wade confirmed his responses to the May 12, 2015 letter from Lowe's attorney. *Id.* at 14-15. On redirect, he stated that, because Mr. Miller's symptoms have persisted six to twelve months, he would now characterize Mr. Miller's condition as a chronic exacerbation. *Id.* at 17.

Mr. Miller filed a PBD on May 20, 2015, seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed the DCN on June 19, 2015.

**Mr. Miller's Contentions**

Mr. Miller contends he sustained a work-related injury to his left hip because of his workplace fall on August 31, 2014. He argues that, although he had a preexisting degenerative condition and would likely need surgery in the future, the pain resulting from his accident is the only reason surgery is necessary at this time. Mr. Miller relies on *Trosper v. Armstrong Wood Products, Inc.*, 273 S.W.3d 598 (Tenn. 2008), in support of his argument that this aggravation of his preexisting arthritis is compensable. He seeks

an order requiring Lowe's to authorize the hip-replacement surgery recommended by Dr. Wade.

## Lowe's Home Centers, Inc.'s Contentions

Lowe's contends the aggravation of Mr. Miller's preexisting condition is not compensable. It argues he suffered merely a non-compensable increase in pain. Lowe's further contends Mr. Miller's hip claim is not compensable because he has not proven that any aggravation to the preexisting condition is permanent.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### Factual Findings

Mr. Miller suffered a fall in the course and scope of his employment on August 31, 2014. At the time of his fall, he had preexisting osteoarthritis in his left hip but had no significant left hip symptoms or problems. As a result of the accident, Mr. Miller now suffers from pain that interferes with his daily activities.

### Application of Law to Facts

Tennessee Code Annotated section 50-6-102(14)(A) (2014) provides:

An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment.

4

It is undisputed Mr. Miller had a preexisting degenerative condition in his left hip. It is also clear from the medical proof that his workplace fall resulted in the onset of symptoms in the hip. The question to be resolved is whether this constitutes the statutorily-required "aggravation of a preexisting disease."

As noted by the Tennessee Supreme Court, "the precise contours of the rule [of aggravation] have not always been articulated in a consistent manner." *Trosper*, 273 S.W.3d at 605. This inconsistency is apparent in the cases cited by the parties, some of which seem to require an "anatomical change" of the preexisting condition. The Court is guided by the explicitly-stated intent of *Trosper* to provide a clear framework for the trial courts:

> We reiterate that the employee does not suffer a compensable injury where the work activity aggravates the pre-existing condition merely by increasing the pain. However, if the work injury advances the severity of the pre-existing condition, or if, as a result of the pre-existing condition, the employee suffers a new, distinct injury other than increased pain, then the work injury is compensable.[1]

*Id.* at 607. Further, as noted by Justice Koch in his dissent, evidence that a preexisting condition has advanced may take several forms, including evidence of an anatomical change. "However, we have never held that proving the existence of an anatomical or physical change is the only way to establish that work-related activities caused a progression in an employee's preexisting condition." *Id.* at 616.

In *White v. Werthan Industries*, 824 S.W.2d 158, 159 (Tenn. 1992), the employee had a back injury and was considering surgery when he suffered a subsequent fall at work. The fall significantly increased his pain, which caused his doctor to perform surgery right away. *Id.* Although there was no medical proof that the preexisting disk herniation had worsened, the Tennessee Supreme Court focused on the employee's course of treatment and determined that, because his surgery became necessary only as a result of his workplace fall, the injury was compensable. *Id.* at 160-161.

---

[1] The Court notes that the *Trosper* decision included a reference to the "equitable construction" provision of an earlier version of the statute. However, the Supreme Court did not base its framework for analyzing the compensability of aggravation of preexisting conditions on the doctrine of equitable construction. "Reliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Dr. Wade opined Mr. Miller's work accident caused the onset of his symptoms, and those symptoms made hip-replacement surgery necessary at this time. Although Dr. Wade felt it was likely Mr. Miller would have needed the surgery at some point in the future, he acknowledged it was speculative to try to predict when that would have occurred. Further, unlike the employee in *White*, who knew about his condition and was already considering surgery, Mr. Miller had no symptoms and was unaware of his hip condition before his accident. The Court therefore finds that Mr. Miller appears likely to establish he is entitled to medical treatment pursuant to Tennessee Code Annotated section 50-6-204 (2014).

Lowe's argues Mr. Miller is not entitled to medical treatment because he has not established that the aggravation of his preexisting condition is permanent.[2] It relies on *Milligan v. Ten-State, Inc.*, 1998 Tenn. LEXIS 69, at *5 (Tenn. Workers' Comp. Panel Feb. 20, 1998), which stated: "[W]hile aggravation of a preexisting physical condition is compensable, in order to recover benefits for permanent disability based upon such aggravation, the aggravation must be permanent, and not the mere normal or expected progress of the preexisting condition."

This argument is unpersuasive, as the issue in *Milligan* was an employee's claim for permanent disability benefits and not, as in Mr. Miller's case, a request for medical treatment. The more relevant authority is *Foreman v. Automatic Systems, Inc. and Liberty Mutual Insurance Company*, 272 S.W.3d 560 (Tenn. 2008). In *Foreman*, the Tennessee Supreme Court affirmed a finding of temporary disability when the employee was unable to prove permanent injury through medical proof of anatomic change. The treating physician in *Foreman* stated, "I thus feel her work-related injury exacerbated her symptoms, but I do not see that there has been any anatomic change in relation to this." *Id.* at 575. The Supreme Court recognized that increased pain without any permanent aggravation, while not compensable as a permanent injury, nevertheless entitled an employee to temporary disability and medical benefits during the period of the temporary aggravation.

The Court finds that, pursuant to *Foreman*, Mr. Miller is eligible for medical benefits without a showing that his injury resulted in permanent anatomic change.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Miller's left-hip injury shall be paid and Lowe's or its workers' compensation carrier shall provide Mr. Miller with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2014),

---

[2] Dr. Wade initially indicated Mr. Miller's preexisting condition was temporarily exacerbated, but later testified in his deposition the exacerbation was chronic.

to be initiated by Lowe's or its workers' compensation carrier authorizing the surgery recommended by Dr. Wade. Medical bills shall be furnished to Lowe's or its workers' compensation carrier by Mr. Miller or medical providers.

2. This matter is set for an Initial (Scheduling) Hearing on November 18, 2015, at 9:00 a.m.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 16th day of September, 2015.**

_____
**Dale Tipps, Judge
Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll-free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order

to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the

case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 16th day of September, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Jill Draughon | | | X | jdraughon@hughesandcoleman.com |
| Nancy Steer | | | X | Nancy.steer@leitnerfirm.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9